**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-61374-CIV-LEIBOWITZ/Hernandez**

**CERLY GLEYCE DE SOUZA MOITA**,
*Petitioner*,

*v.*

**TODD BLANCHE**, *et al.*,
*Respondents*.
_______________________________________/

**REPORT AND RECOMMENDATION**

Before the Court is Petitioner Cerly Gleyce de Souza Moita's ("Petitioner") Second Emergency Motion seeking immediate release from immigration detention ("Motion"). [ECF No. 33]. The matter has been fully briefed and is ripe for review. [ECF Nos. 39 & 40].[1] Having reviewed the parties' arguments, the record, and the relevant legal authority, the Court respectfully recommends that the Motion be **DENIED**.

BACKGROUND

Petitioner is a 41-year-old Brazilian citizen. [ECF No. 19 ¶ 18; ECF No. 33 at 2]. She entered the United States "on or about an unknown date at or near an unknown place not designated as a port of entry." [ECF No. 1-2 at 9]. On April 27, 2022, she was paroled at the Texas border and sought asylum. *Id.* at 9–10; [ECF No. 19 ¶¶ 25–26]. In November 2024, Petitioner was placed in removal proceedings and charged with inadmissibility under sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").[2] [ECF No. 19 ¶ 27].

[1] The Honorable David S. Leibowitz referred the Motion to us for a report and recommendation. [ECF No. 41].

[2] Section 212(a)(6)(A)(i) provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i). Section 212(a)(7)(A)(i)(I) provides that "any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa, reentry permit,

On May 16, 2025, Petitioner was arrested for fleeing the scene of a car accident involving injury. [ECF No. 1-2 at 5, 9–10]. She was later transferred to United States Immigration and Customs Enforcement ("ICE") custody. [ECF No. 19 ¶ 29]. On September 23, 2025, Petitioner appeared before an Immigration Judge ("IJ") for a Custody Redetermination Hearing. *Id.* ¶ 31. After the hearing, the IJ denied Petitioner's request for bond for two reasons. The IJ first concluded that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). "Alternatively," the IJ went on, Petitioner had "not met her burden of establishing eligibility for release on bond" for various reasons, including the May 2025 arrest. [ECF No. 39-2 at 4]. The IJ observed that "[Petitioner's] actions in leaving the scene of an accident evidence[ ] a risk of flight[ ] and a danger to the community," and so "the totality of the circumstances" supported detention. *Id.*

On December 2, 2025, Petitioner filed a habeas petition challenging the duration of her detention. [ECF No. 1]. Days later, an IJ ordered Petitioner removed from the United States, a decision she reserved the right to appeal. [ECF No. 19 ¶ 35]. Before her thirty-day appellate window had closed, however, ICE deported Petitioner to Brazil. *Id.* ¶ 36. Consequently, on March 31, 2026, Petitioner amended[3] her habeas petition ("Second Amended Complaint") to assert the following claims related to her premature removal: Fifth Amendment Due Process violation (Count I); "Ultra Vires Removal" (Count II); and "Continuing Restraints on Liberty and Collateral Consequences" (Count III). *Id.* at ¶¶ 44–60.

---

border crossing identification card, or other valid entry document . . . and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required . . . is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i).

[3] This was the second amendment; Petitioner submitted a First Amended Complaint on December 19, 2025, before her untimely deportation. [ECF No. 7].

On May 11, 2026, Petitioner filed the Motion[4] seeking her immediate release from Richwood Correctional Center in Louisiana. [ECF No. 33]. Deviating slightly from the claims raised in the Second Amended Complaint, Petitioner contends that her immediate release is necessary because she never received the bond hearing to which she was entitled. *Id.* at 14–15. She argues that, because the IJ applied § 1225(b)'s mandatory detention provision, she never received the individualized consideration she was due under § 1226. Respondents counter that whatever the IJ's conclusions about § 1225, the judge *also* found Petitioner posed a flight risk and a danger to the community under § 1226, and this Court cannot second-guess those findings. [ECF No. 39 at 5–6].

The Court held an evidentiary hearing on September 1, 2026. [ECF No. 46]. The parties stipulated that Petitioner's medical records showed she is receiving some level of medical attention at her current detention facility, though the parties dispute the adequacy of that care. Although the Motion references other grounds for relief,[5] Petitioner clarified that the present request is predicated solely on the denial of bond claim. The Court also does not address Respondents' premature-deportation argument, [ECF No. 39 at 4], because Petitioner is not asserting this as a basis for relief. Consequently, relief in this case turns on whether Petitioner received a bond hearing under § 1226. Because Petitioner received such a hearing, she has not established the first prerequisite for preliminary injunctive relief—a substantial likelihood of success on the merits—and the Motion should be denied.

## Legal Framework

To obtain a temporary restraining order or a preliminary injunction, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the

[4] Petitioner filed an identical motion May 4, 2026, [ECF No. 25], which was terminated when the matter was transferred to the Western District of Louisiana, [ECF No. 26]. Petitioner renewed her emergency motion when the case returned to this District, *see* [ECF Nos. 29, 30, 33].

[5] [ECF No. 33 at 13, 16–20 (outlining Fifth and Eighth Amendment claims related to conditions of confinement)].

relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quotation marks omitted).

## Analysis

The Court turns first to the likelihood-of-success prong, which in this case hinges on Petitioner's bond-related claims. Because Petitioner has not clearly established a substantial likelihood of success, we need not reach the remaining three elements.

Petitioner argues she is entitled to an individualized bond hearing and that, because she never received one, her continued detention violates the INA, the Fifth Amendment's Due Process Clause, and the Eighth Amendment. [ECF No. 33 at 13]. Perhaps anticipating pushback from Respondents, Petitioner outlines why she is entitled to a bond hearing, distinguishing her situation from those governed by § 1225(b)'s mandatory-detention provision. *Id.* at 14–15. Respondents do not, however, contest Petitioner's right to a bond hearing under § 1226. Instead, Respondents point out she *did* receive a bond hearing and "there remains no injury for the court to redress." [ECF No. 39 at 4]. The Court agrees that Petitioner received a bond hearing. Moreover, the IJ's findings that Petitioner presented both a risk of flight and a danger to the community were based on an individualized assessment—Petitioner's decision to leave the scene of an accident involving serious injury. [ECF No. 39-2 at 4 (concluding that Petitioner's "actions in leaving the scene of an accident evidence[ ] a risk of flight[ ] and a danger to the community.")]. And the Court lacks jurisdiction to review these discretionary determinations.

Because Respondents do not challenge § 1226(a)'s applicability,[6] the Court's discussion of the debate surrounding § 1225 and § 1226 is brief. A noncitizen may be detained during the pendency of their removal proceedings, but the statutory basis for that detention impacts bond eligibility. Detention under § 1226(a) is discretionary, meaning the noncitizen is entitled to a bond hearing. But detention under § 1225(b), which applies to "arriving aliens" who are "seeking admission," is mandatory and automatic. On May 6, 2026, the Eleventh Circuit answered a question that has divided federal circuits,[7] holding that "§ 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior." *Hernandez Alvarez v. Warden*, 175 F.4th 1258, 1276 (11th Cir. 2026). The Court reasoned:

> The text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996] yield the conclusion that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here.

*Id.* at 1262. It rejected the contention that "mere presence in the interior transforms [noncitizens] into applicants who are 'seeking admission,'" observing that the ordinary meaning of "seeking" "requires taking an affirmative step or commencing some process." *Id.* at 1269. Courts in this District have applied *Hernandez Alvarez*'s reasoning to conclude that individuals—like Petitioner—who were initially paroled into the United States fall within § 1226's ambit. *See, e.g.*, *Sylvaince v. Warden, Miami Fed. Det.*

---

[6] Respondents never say § 1226(a) applies, and their position could alternatively be framed as "*assuming* § 1226(a) applies, its requirements were met." But Respondents do not present their argument this way. Indeed, they take no position on what the Court should do it if finds the September 2025 hearing deficient, which suggests tacit acknowledgment that denial of a bond hearing decides the issue in Petitioner's favor.

[7] *Compare Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026) (holding that § 1225 generally does not apply to noncitizens detained in the interior), *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (holding that § 1225 does not apply to noncitizens who are present in the United States for some time after entering without inspection), *and Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061–62 (7th Cir. 2025) (rejecting argument that all noncitizens arrested inside United States are subject to § 1225's mandatory-detention provision), *with Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) (ruling noncitizen detained in the interior could be held without bond under § 1225), *and Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (concluding noncitizen already inside the United States is subject to § 1225 as an "applicant for admission" who is "seeking admission").

*Ctr.*, No. 26-cv-23991-RAR, 2026 WL 2568522, at *2 (S.D. Fla. Aug. 31, 2026) (rejecting argument that "upon the expiration of his parole, Petitioner became subject to mandatory detention pursuant to § 1225(b)(2)"); *Pierre v. Miami ICE Field Off. Dir.*, No. 26-cv-14327-JEM, 2026 WL 2725816, at *2 (S.D. Fla. Sept. 16, 2026) (same).

Petitioner contends that her continued detention is "unlawful *per se*" because she was "denied bond under an incorrect statutory framework," that is, § 1225, and remained in detention after her return to the United States. [ECF No. 33 at 15, 21]. This argument ignores the IJ's flight and dangerousness findings, which were based on Petitioner's conduct and individual circumstances. In her reply, Petitioner briefly addresses the alternative findings, claiming that she "did not receive a § 1226(a) bond hearing [and] the alternative findings did not convert the jurisdictional denial into one." [ECF No. 40 at 3]. She does not, however, describe what "a § 1226(a) bond hearing" entails or—importantly—how the September 2025 hearing fell short procedurally. Rather, Petitioner's challenge to the IJ's alternative ruling relies on its misapplication of § 1225. *Id.* at 4. In Petitioner's view, the IJ's § 1225(a) analysis fatally tainted the proceedings, such that the Court must disregard everything that came after. Petitioner provides no authority to support this claim, which goes against a key principle of appellate review. *See Sapuppo v. Allstate Floridians Ins. Co.*, 739 F.3d 678, 680 (S.D. Fla. 2014) (judgment based on "multiple, independent grounds," can only be overturned if "every stated ground for the judgment . . . is incorrect," including "alternative holdings").

Rejecting that unsupported assumption, we consider whether the IJ's flight and dangerousness discussion was, in fact, an independent determination. It was, for two reasons. First, the IJ separated its legal and factual analysis, and nothing in the record suggests the § 1225 discussion somehow bled into the IJ's factual findings. Indeed, by beginning the factual discussion with "[a]lternatively," the IJ clarified that what followed was an independent basis for detention. [ECF No. 39-2 at 4]. Second, the IJ conducted a fact specific analysis that referenced Petitioner's individual circumstances.

Addressing Petitioner's family situation, the IJ acknowledged that Petitioner was married to a United States Citizen, normally a factor favoring bond, but noted that "[m]arriages entered into during removal proceedings are presumed to have been done for an immigration benefit." *Id.* The lack of a statement from Petitioner's spouse, the IJ explained, further undermined the marriage argument. *Id.* And Petitioner's proposed sponsor lacked the financial resources to support her. *Id.* Finally, the IJ found that Petitioner's "actions in leaving the scene of an accident evidence[ ] a risk of flight[ ] and a danger to the community." *Id.*

Petitioner claims the IJ failed to "meaningfully weigh countervailing circumstances bearing on release, including Petitioner's lack of other criminal history, family and community ties," and other factors. [ECF No. 40 at 4]. But the IJ *did* consider countervailing circumstances—Petitioner's marriage to a United States Citizen and the availability of a sponsor—and explained why they were insufficient to support bond. Petitioner has cited no authority to suggest that an IJ must address every argument for release before ordering detention. In short, it appears that Petitioner is asking the Court to review the IJ's conclusions, not its process. That is beyond this Court's jurisdiction. 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General . . . regarding the detention of any alien or the revocation or denial of bond or parole."); *see also Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (noting "§ 1226(e) precludes an alien from challenging a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release") (cleaned up) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *Stephens v. Ripa*, No. 22-cv-20110-JEM, 2022 WL 18108494, at *4 (S.D. Fla. Nov. 14, 2022) ("While Petitioner may disagree with the IJ's conclusion, it is beyond this Court's authority to reweigh the evidence presented to the IJ and reach a conclusion of its own."), *report and recommendation adopted*, No. 22-cv-20110-JEM, 2023 WL 34689 (S.D. Fla. Jan. 4, 2023).

Because Petitioner fails to clearly establish a likelihood of success on the claim underlying the Motion, the Court need not address the remaining elements for injunctive relief. *Wreal*, 840 F.3d at 1248.

* * *

For the foregoing reasons, we respectfully recommend that the Motion, [ECF. No. 33], be **DENIED**.

Under Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have 14 days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1; *see, e.g.*, *Patton v. Rowell*, 678 F. App'x 898, 901 (11th Cir. 2017); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 768–69 (11th Cir. 2016).

**DONE AND RECOMMENDED** in the Southern District of Florida on September 30, 2026.

**YENEY HERNANDEZ**
**UNITED STATES MAGISTRATE JUDGE**

cc: counsel of record